**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DIANE GOCHIN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 13-7559** |
| | : | |
| **THOMAS JEFFERSON** | : | |
| **UNIVERSITY, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## O R D E R

Plaintiff brings *pro se* discrimination claims against her former employer and supervisors, alleging that they failed to promote her for some 53 positions based on her age and gender and that they and lowered her hours and pay in retaliation for her filing an EEOC complaint. (Compl., Doc. No. 4.)  She seeks relief under Title VII, the Age Discrimination in Employment Act, the Pennsylvania Human Relations Act, the Older Workers' Benefits Protections Act (a part of the ADEA), the Pennsylvania Wage Payment and Collection Law, the Lilly Ledbetter Fair Pay Act, and the Equal Pay Act.  (Id. at ¶ 12.)  Defendants moved for summary judgment as to all Plaintiff's claims.  (Doc. No. 35.)  I denied the Defendants' Motion without prejudice, ordering additional discovery.  (Doc. No. 44.)  After completing discovery, Defendants timely renewed their Motion; Plaintiff responded with a Motion for Default Judgment and Sanctions. (Doc. Nos. 45, 46.)  I will deny Plaintiff's Motion for Default Judgment and Sanctions and grant Defendant's Renewed Motion for Summary Judgment.

## I.   FACTUAL BACKGROUND

Plaintiff is a fifty-seven-year-old woman employed by Defendant Thomas Jefferson University as a Grants and Contracts Administrator from February 2008 to October 2, 2014. (Doc. No. 45, Exs. A, B, P.) Defendant Joy Soleimanzadeh was Plaintiff's supervisor.

(Soleimanzadeh Dep., Doc. No. 42, Ex. E at 42:7-8; Gochin Dep., Doc. No. 45, Ex. G at 54:21-22.)  Defendant James Ortlieb is a Senior Compensation Analyst at TJU.  (Ortlieb Dep., Doc. No. 35, Ex. I at 4:15-17.)   Defendant Randy McLaughlin was the Manager of Employee Relations at TJU.  (Compl., Doc. No. 4 at ¶ 3; Doc. No. 45, Ex. N.)  Defendant Patricia Vercio was the supervisor of Plaintiff's daughter.  (Compl., Doc. No. 4 at ¶ 5.)

Between 2009 and 2013, Plaintiff sought promotions at TJU by "machine gun[ning] out" applications online to 53 positions.  (Gochin Dep., Doc. No. 45, Ex. G at 30:1-25, 31:5-9.)  She was not selected for any.  (Doc. No. 45, Exs. D, F.)   Plaintiff asserts that she was qualified for each of these positions based solely on her own determination that she has the requisite education and experience. (E.g. Doc No. 4 ¶¶ 25, 27, 29, 31.)

In January 2012, Plaintiff was informed that her department could no longer afford to pay her full salary because the grant from which her salary was disbursed was depleting.  (Gochin Dep., Doc. No. 45, Ex. G at 53:20-25, 54:1-10.)  Accordingly, Plaintiff began splitting her time between that department and the Jefferson School of Population Health.  (Id. at 53:20-25, 54:1-24.)  Eventually, her original position was eliminated entirely, so that her only work was the part-time position with Population Health.  (Glatter Dep., Doc. No. 42, Ex. D at 58:20-25; Gochin Dep., Doc. No. 45, Ex. G at 55:3-9.)  Plaintiff acknowledges that these actions were due to depleting grant money.  (Gochin Dep., Doc. No. 45, Ex. G at 54:5-10 ("So they were spending the money faster, and they weren't getting as much interest.  That's probably, you know, around the time when I figured out how much, you know that I was dependent on the interest.").)  In August 2012, TJU fired Plaintiff's daughter because of "excessive absenteeism and lateness" after two warnings, a three-day suspension, and an indefinite suspension.  (Doc. No. 45 Ex. L.)

Plaintiff alleges that she was "constructively demoted"—and her daughter terminated—in retaliation for Plaintiff's filing complaints with the Equal Employment Opportunity Commission. She filed an administrative charge with the EEOC in June 2012, alleging sex and age discrimination. (Doc. No. 45, Ex. C.) She subsequently withdrew this charge. (Id.) She filed another charge with the EEOC on March 7, 2013, alleging sex and age discrimination and retaliation on behalf of herself and her daughter, whom she identified only as Jane Doe. (Doc. No. 45, Ex. B at 2, 4.) The EEOC issued a Notice of Right to Sue on September 27, 2013. (Id. at 11.) Plaintiff commenced the instant action on December 24, 2013. (Doc. No. 1.)

II.    Plaintiff's Motion for Default Sanctions

Throughout this case, Plaintiff has repeatedly and baselessly attacked defense counsel— the firm of Klehr, Harrison, Harvey, Branzburg—threatening counsel and Defendants with sanctions. (See, e.g., Emails from Plaintiff to defense counsel, Doc No. 8 Ex. G, ("I do intend to file for sanctions, if you file a bad faith and frivolous motion just to run up your bills in the hope you get lucky and have some dishonest judge go along with you. Do you think you can do this? Do you know something about this Judge that I do not know?"), Ex. N ("The judiciary is a major facilitator of government corruption overall."))

Yet the only misconduct in this case has been committed by Plaintiff herself. Early in the proceeding, Defendants sought a protective order to bar Plaintiff from communicating directly with represented Defendants. (Doc. No. 8.) Defendants were compelled to seek this relief when Plaintiff refused to cease these communications. (Email from Plaintiff to defense counsel, Doc. No. 8 Ex. I ("The judiciary branch has been operating without the consent of the governed for decades via these undemocratic processes, and I do not subscribe to them.")) She also threatened

that she would "embarrass" TJU's executives unless Defendants agreed to settle her claim for $475,000.  (Doc. No. 8-1 at 2, No. 8 Ex. C.)

I issued a Protective Order on March 28, 2014, prohibiting Plaintiff from making these communications and from "issuing any harassing, threatening and/or disparaging correspondence."  (Doc. No. 9.)  Plaintiff moved to vacate my Protective Order, again accusing defense counsel of bad faith.  (Doc. No. 10 at 1 n.1 (calling the Motion for a Protective order "an exercise in bill-padding."))   I denied the Motion to Vacate because Plaintiff did not "set forth a reason that warrants reconsideration."  (Doc. No. 11.)

When Plaintiff did not comply with scheduled discovery, Defendants asked me to compel her to provide full and complete initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). (Doc. Nos. 15, 18.)  In opposing this Motion, Plaintiff wrote that my discovery scheduling was "purely arbitrary," that she was being "denied due process," and suggested that I had a "personal vendetta" against her.  (Doc. No. 17 ("I will be filing another such suit, and may well add you as a defendant in that case as you should have *sua sponte* removed yourself as a judge in this case."))

Defendants subsequently sought another protective order in response to Plaintiff's abusive discovery requests. (Doc. No. 19.)  Although Plaintiff had not herself complied with her discovery obligations, she sought to depose TJU's former President and Senior Vice President, who Plaintiff admitted had no personal knowledge of her or her employment.  (Doc. No. 19 Ex. G.)  In issuing the Protective Order as to these senior executives on June 17, 2014, I again admonished Plaintiff to comply with her discovery obligations. (Doc. No. 20.)   Plaintiff responded with a letter accusing defense counsel of deception and repeating her due process

complaints. (Doc. No. 23 ("This is unacceptable, and I cannot believe this is justice in America."))

Because of Plaintiff's continued refusal to produce discovery, Defendants moved to dismiss her Complaint on June 24, 2014.  (Doc. No. 25).  I gave Plaintiff additional time to respond, and instructed her to "set forth a detailed explanation of her compliance with her discovery obligations" or "explain her failure to do so." (Doc. No. 24.)  On July 10, 2014, Plaintiff sent Defendants a letter with additional responses to interrogatories and stated her intention to seek sanctions, calling Defendants' letters to the Court "frivolous communications," and again asserting a "deprivation of due process."  She also declared that "Defendant has been given special privileges and liberties," which she deemed "indicative of the bias of this court and its disrespect for *pro se* parties." (Doc. No. 26 at 2.)

On July 23, 2014, Plaintiff filed a Motion to Compel and a Request for Sanctions, asserting that "Defendants have continually acted in bad faith," apparently because Defendants had refused to produce executive compensation and income tax information, and attorney invoices.  (Doc. No. 30.)  I denied Plaintiff's Motion to Compel because her discovery demands were "largely unreasonable, and to a degree, irrational."   I directed that Defendants were "obligated to produce to Plaintiff any documents relating to the decision to employ her and her own personnel records. These documents presumably include any records relating to Defendants' decisions as to whether to promote Plaintiff or employ her in a different position."  (Doc. No. 31.)  I denied Plaintiff's request for sanctions as frivolous. (Id.)

Defendants moved for Summary Judgment on August 28, 2014.  (Doc. No. 35.)  Plaintiff responded by again threatening to seek sanctions, and again asserting (without basis) that Defendants were not complying with discovery.  (Doc. Nos. 36 ("[Defense counsel] also failed

to provide the discovery I requested, and I will be filing a motion for sanctions regarding this.");
No. 40 (accusing defense counsel of "abusing the process by intentionally protracting this
litigation, failing to provide discovery" and asserting that "sanctions should be ordered."))
Plaintiff then filed a Memorandum of Law in Opposition to Summary Judgment, asserting that
she did not "receive . . . crucial information needed as evidence," and accusing Defendants of
withholding this "intentionally." (Doc. No. 45 at 42-43.)

In an abundance of caution, I denied summary judgment without prejudice, ordering
Defendants, "[i]nsofar as they ha[d] not done so already," to: "1. Provide job descriptions and
necessary qualifications for the fifty-three positions to which Plaintiff applied; and 2. Provide the
salaries, benefits, ages, genders, and job descriptions of all TJU employees who were employed
in positions with titles and/or job descriptions matching or similar to Plaintiff's, from 2008 to
2014."   (Doc. No. 44.)   Having complied with my discovery orders, Defendants renewed their
Motion for Summary Judgment on April 2, 2015. (Doc. No. 45.)   Rather than addressing the
merits of Defendants' Motion, Plaintiff filed a Motion for Default Judgment and Sanctions on
April 15, 2015. (Doc. No. 46.)

Once again, I conclude that Plaintiff's Motion for Default Judgment and Sanctions is
frivolous.   Contrary to Plaintiff's baseless assertions, Defendants have met all discovery
obligations and deadlines.  (See Doc. No. 47 Exs. 5, 7.)  For example, although Plaintiff alleges
she was not provided with "resumes" of similarly situated employees, I never ordered
Defendants to produce such documents.  (Doc. No. 46 ¶ 3.)

Plaintiff alone has failed to comply with my Orders: she refused to respond to
Defendants' summary judgment motion, stating that she "is not addressing the 'Renewed Motion
for Summary Judgment.'"  (Doc. No. 46 at 1.)  Similarly, Plaintiff propounded new discovery

requests eight months after discovery closed.  (<u>See</u> Doc. Nos. 20, 46 ¶ 17, 50.)  Although I had ordered Plaintiff not to "issu[e] any harassing, threatening and/or disparaging correspondence" to defense counsel, Plaintiff sent an email mocking the death of counsel's mother.  (Doc. No. 9; No. 47, Ex. 6 ("As you have recently learned, once you are over fifty you are on borrowed time.")).

I have here only summarized Plaintiff's abusive actions.  Even this abbreviated description confirms that Plaintiff mistakenly believes that abusing Defendants and their lawyers is a substitute for evidence to support her claims.  <u>See</u> <u>Berckeley Inv. Grp., Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006)("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

I have viewed the facts in the light most favorable to Plaintiff and made every reasonable inference in her favor.  Because her claims are baseless, I will grant Defendant's Motion for Summary Judgment.

## III.   <u>LEGAL STANDARDS FOR SUMMARY JUDGMENT</u>

I may grant summary judgment "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of any genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  An issue is material only if it could affect the result of the suit under governing law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  I "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.  <u>Hugh v. Butler Cnty. Family YMCA</u>, 418 F.3d 265, 267 (3d Cir.

2005).  If I then determine that there is no genuine issue of material fact, summary judgment is appropriate.  See Celotex, 477 U.S. at 322.

Summary judgment is appropriate where the moving party shows that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.  "A nonmoving party must adduce more than a mere scintilla of evidence in its favor, . . . and cannot simply reassert factually unsupported allegations contained in its pleadings," however.  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (citing Liberty Lobby, 477 U.S. at 249). Where a moving party identifies an absence of necessary evidence in the record, the nonmoving party "must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

## IV.   DISCUSSION

Defendants argue that: 1) most of Plaintiff's claims are time barred; 2) Plaintiff has failed to establish a prima facie case of discrimination or retaliation, (or pretext); 3) Plaintiff has no viable Equal Pay Act claim, 4) Plaintiff does not have viable claims against individual defendants; 5) Plaintiff cannot bring a pattern or practice claim; 6) Plaintiff has not demonstrated a hostile work environment; and 7) Plaintiff has no claim for wage-law violations.

### A.   Statute of Limitations

Plaintiff filed a charge of discrimination with both the EEOC and PHRC on March 7, 2013, asserting substantially the same claims that she brings here.  (See Doc. No. 45, Ex. B at 2.) Defendants argue that Plaintiff's claims based on 36 hiring decisions—where Plaintiff applied for positions but was not selected—occurred outside the limitations period.  I agree.

Under Title VII and ADEA, a plaintiff must file an EEOC complaint within 300 days of the alleged discriminatory act.  Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing 42 U.S.C. §§ 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(2) (ADEA)).   Under the PHRA, a plaintiff must file a complaint within 180 days of the alleged discriminatory act.  Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Cons. Stat. §§ 959(a), 962 (PHRA)).   Acts outside the limitations period are not actionable but may be presented as "relevant background evidence."   Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112 (2002) (internal citation omitted).

Any failure to promote Title VII and ADEA claims must be based on actions that took place on or after May 11, 2012, (300 days before Plaintiff filed with the EEOC).  Any failure to promote PHRA claims must be based on actions that took place on or after September 8, 2012, (180 days before Plaintiff filed with the PHRC).   Because the undisputed evidence shows that TJU made hiring decisions on 36 of the 53 positions before May 11, 2012, Plaintiff's claims based on these decisions are time-barred.  (Doc. No. 45 Ex. D.)

Plaintiff argues that the Lilly Ledbetter Fair Pay Act extends the limitations period.  42 U.S.C. § 2000e–5(e)(3)(A).  The Third Circuit has held, however, that the Fair Pay Act does not apply to failure to promote claims.   Noel v. The Boeing Co., 622 F.3d 266, 272-73 (3d Cir. 2010).

Plaintiff also argues that the limitations period should be equitably tolled because "it was difficult to determine who had in fact been hired because of the size of the organization, [and] the Plaintiff was unaware as to the continual discrimination."  (Doc. No. 42 at 14); Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999) ("Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have

been prevented from filing in a timely manner due to sufficiently inequitable circumstances."). Yet, the record shows just the opposite: in June 2012, Plaintiff filed an EEOC complaint (that she subsequently withdrew) in which she alleged virtually all the failure to promote claims.  (See Doc. Nos. 4 ¶¶ 8, 14, 33, 39; No. 42 at 11; No. 45 Ex.C.)  Moreover, Plaintiff does not explain why she had sufficient information to file an EEOC complaint in March 2013, but did not have enough information to do so earlier.  In these circumstances, neither the Fair Pay Act nor the equitable tolling doctrine saves 36 of Plaintiff's claims, which are time-barred.

Of the remaining 17 positions, 12 were canceled (so that no one was promoted or hired to fill them).  (Doc. No. 45 Ex. D.)  Thus, Plaintiff's claims respecting 5 positions remain.  The record confirms that these claims must be dismissed.

### B.   _Age and Gender Discrimination_

To establish a prima facie age or sex discrimination case in a failure-to-promote case, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably or the adverse-employment action occurred in circumstances of her termination that give rise to an inference of discrimination.  Red v. Potter, 211 F. App'x 82, 83 (3d Cir. 2006) (collecting cases).  Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment decision."  Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009).  If the employer does so, the burden shifts back to the plaintiff to show that the articulated reason was pretextual.  Id.  The plaintiff must ultimately prove that a discriminatory factor was the but-for cause of the adverse employment action.  Id.

The undisputed evidence establishes that Plaintiff's age and gender discrimination claims have no evidentiary basis.  Of the 5 remaining claims, Plaintiff fails to establish a prima facie case for one because the candidate hired was female and older than Plaintiff.  (Doc. No. 45-2 ¶26; No. 45 Exs. D, F (Job# 102748)); Red, 211 F. App'x at 83.  Even assuming Plaintiff was qualified for the remaining 4 positions, Defendants have articulated legitimate, nondiscriminatory reasons for all their hiring decisions.  (Doc. No. 45 Exs. D, E.)  Plaintiff has rebutted none of them.  I will discuss only those decisions relating to the 4 claims that are not time-barred.

TJU hired a 37-year old male as an Assistant Director of Development and Research because the candidate had "extensive 7 years of relevant experience in qualitative analysis." (Doc. No. 45, Ex. E (Carrol Decl.) (Job 77853).)   TJU hired a 30-year old female as an Application Administrator because of the candidate's "relevant prior experience in a similar role at a law firm and training experience, and her demonstrated proficiency for learning new applications and training others."  (Id. Ex. E (Donegan Decl.) (Job 93823).)  TJU hired a 42 year-old female as a financial analyst because of the candidate's finance/accounting background and experience." (Id. Ex. E. (Lee Decl.) (Job 98546).)   TJU also hired a 25 year-old female as a database administrator for infection control because of the "candidate's prior healthcare experience and desire to work in a part-time position."  (Id. Ex. E. (Melendez Decl.) (Job 120661).)

 Plaintiff has not shown that these articulated reasons are pretextual, (which is unsurprising given that her filings include no merits discussion).  See Smith, 589 F.3d at 691. Plaintiff apparently has an undergraduate degree in English and a Master's Degree in Education. (Doc. No. 42, Ex. B.)  Plaintiff appears to have determined that these credentials made her

superior candidate for all 53 positions to which she applied. (E.g. Doc. Nos. 4 ¶ 22 (asserting that "her technical and writing skills were far superior to her predecessor and Defendant Soleiman"), ¶ 25 ("Plaintiff DRG was clearly overqualified"; No. 42 at 41 (stating that "[h]er employment had been without incident for seven years, she has an extensive resume, abundant higher education including having graduated from an Ivy League institution").) This self-assessment does not demonstrate pretext. Duffy v. Sodexho, Inc., 2008 WL 4919399, at *9 (E.D. Pa. Nov. 17, 2008) ("[S]elf-assessment of one's abilities is not sufficient to show pretext.") (citing Dunleavy v. Mount Olive Twp., 183 F. App'x 157, 159 (3d Cir. 2006)).

There is no genuine issue of material fact as to whether Plaintiff was discriminated against on the basis of age or gender. Accordingly, I will grant Summary Judgment to Defendants on Plaintiff's failure to promote claims.

Finally, it is unclear whether Plaintiff also asserts that her "constructive demotion" claim was based on gender or age in addition to retaliation for filing EEOC complaints. Regardless, as I explain below, and Plaintiff herself acknowledged in a deposition, her "constructive demotion" was due to depleting grant money—not bias.

### C.   *Retaliation*

Plaintiff alleges that Defendants constructively demoted her and fired her daughter for bringing an EEOC charge. (Doc. No. 4 ¶ 8.). To establish a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d

Cir. 1995)).  A plaintiff may bring a third-party retaliation claim based on the protected activity of a "close family member." Thompson v. N. Amer. Stainless, 131 S.Ct. 863, 868 (2011).  To show a causal connection, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013).  If the plaintiff establishes a prima facie case, it is the defendant's burden to articulate a legitimate, non-retaliatory reason for its actions. Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997).  The plaintiff must then show that the articulated reason was pretextual. Id.

Plaintiff has not established that her EEOC complaints were a "but-for cause" of any "adverse employment action."  Plaintiff bases her "constructive demotion" arguments on her responsibilities being split between two departments, being reduced to part-time work, and being changed from an "exempt" to "non-exempt" employee.  (See Compl. ¶ 13; Ortlieb Dep., Doc. No. 45, Ex. I at 17:8-13.)

Yet, Plaintiff acknowledges that her responsibilities were split in January 2012, *before* she filed either of her EEOC complaints.  (See Gochin Dep., Doc. No. 45, Ex. G at 53:20-25; 54:1-3 ("Q: And you said the split in your position occurred in approximately January of 2012?" A: 2012, yeah.")); see Joseph  v. N.J. Transit Rail Operations, Inc., 586 F. App'x 890, 893 (3d Cir. 2014) (timing is necessary to establish a causal connection).

Plaintiff also acknowledges that her time being split, as well as her eventual shift to part-time status, were due to depleting grant money.  (See Gochin Dep., Doc. No. 45, Ex. G at 54:5-10 ("So they were spending the money faster, and they weren't getting as much interest.  That's probably, you know, around the time when I figured out how much, you know that I was dependent on the interest.")  Defendants confirm this.  (Soleiman Dep., Doc. No. 45, Ex. H at

78:7-78:16, 81:23 ("The basis was financial. [Plaintiff] was paid from the interest off of the tobacco grants . . . the grants themselves over the years had been reduced. . . it was earning less interest . . . there was just not as much money available"; 78:17-79:9 (explaining that the shift to part-time status in 2013 was because "Pennsylvania was being sued by the tobacco companies and in light of that suit, all monies were not being disbursed. . . there was no money left to pay for [Plaintiff's] salary"); 80:15-81:23)

It is thus plain that her Plaintiff has failed to make out a prima facie case of retaliation with respect to her EEOC charge.

Plaintiff has also failed to show that her shift to FLSA "non-exempt" status in 2013 adversely affected her.  29 U.S.C. § 213. She simultaneously alleges becoming non-exempt was adverse, but laments Defendants' failure to designate her as non-exempt sooner.  (See Doc. No. 4 at ¶ 27 ("Plaintiff DRG was made a non-exempt, hourly employee, now having to swipe in and out on a Kronos time clock – even though she has a Master's degree and over 15 years of relevant work experience."); No. 42 at 33 ("Plaintiff alleges that she was made an exempt employee [initially] solely to deprive her of overtime pay . . . .").)  In any event, Defendants have articulated a legitimate, non-retaliatory reason for this action: because of depleting grant funds, Defendants categorized her non-exempt to comply with federal law.  (E.g. Soleiman Dep., Doc. No. 45, Ex. H at 60:9-15 ("Exempt and nonexempt statuses come from a law – you know, a law. It's whatever the law requires.  If the job indicates that it's an exempt position, then it's exempt, and if it's not, it's not."); Ortlieb Dep., Doc. No. 45, Ex. I at 17:8-13 (explaining exempt designations under FLSA)); see Woodson, 109 F.3d at 920 n.2

Although the Parties do not dispute that Plaintiff may bring a claim for third-party retaliation, she has failed to produce any evidence that Defendants terminated her daughter in

retaliation for Plaintiff filing EEOC complaints.  See Thompson, 131 S.Ct. at 868 ("We expect that firing a close family member will almost always [be actionable].").  The record abounds with uncontradicted evidence demonstrating valid reasons for her daughter's termination— reasons that began before Plaintiff filed an EEOC charge.  Defendants have submitted employment records indicating that Plaintiff's daughter began to receive warnings about "excessive absenteeism and lateness" as early as November 2011—seven months before Plaintiff's initial EEOC complaint.  (See Doc. No. 45, Ex. L at 2.)  The daughter subsequently received another warning in January 2012, and was suspended from work for three days in February 2012.  (Id. at 3, 4.)  She was indefinitely suspended in July 2012 and terminated in August 2012.  (Id. at 7, 8)  The uncontradicted evidence shows that this progressive discipline— two warnings, a three-day suspension, indefinite suspension, and termination—is TJU's established practice for problematic employees.  (Id. at 5-6.)  In these circumstances, because Plaintiff has not shown that her protected activity was a but-for cause of her daughter's suspension and termination, Plaintiff's retaliation claims fail.

In these circumstances, I will grant summary judgment to Defendants with respect to Plaintiff's retaliation claim fails.

>        D.        *Equal Pay Act and Lilly Ledbetter Fair Pay Act*

Plaintiff offers no evidence that she was paid less than men for performing "equal work," or that she "received a paycheck pursuant to the discriminatory compensation decision within the limitations period."  See Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000) (Equal Pay Act applies when employee receives different compensation for equal work); Frintner v. TruePosition, 892 F. Supp. 2d 699, 709 (E.D. Pa. 2012) (Fair Pay Act allows plaintiffs to sue outside limitations period "as long as they received a paycheck issued pursuant to [a]

discriminatory compensation decision" within the limitations period). She alleges that she was given a 2% salary increase while "other employees" were given a higher pay increase, and that her healthcare costs rose. (Doc. No. 4 ¶ 13, 21.) The record indicates, however, that salary increases were uniform for employees in each department, and that healthcare costs rose for all employees. (Doc. No. 45, Ex. H at 21:20-22:4; Ex. J at 31:19-24, 41:19-25; Ex M (TJU Flexible Benefit Program). Accordingly, I will grant Defendants' Motion for Summary Judgment as to Plaintiffs' Equal Pay Act claims.

     E.    _Individual Defendants_

Plaintiff cannot maintain claims against individual defendants under Title VII or the ADEA. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997) ("Congress did not intend to hold individual employees liable under Title VII." (internal citation omitted)); Hill v. Borough of Kutztown, 455 F.3d 255, 246 n.29 (3d Cir. 2006) ("[T]he ADEA does not provide for individual liability."). To the extent that Plaintiff brings such claims against Defendants James Ortlieb, Patricia Vercio, Joy Soleimanzadeh, and Randy McLaughlin, I will grant summary judgment to these defendants.

Plaintiff does not allege that Defendants Randy McLaughlin, James Ortlieb, or Patricia Vercio acted as her supervisors or otherwise aided and abetted Defendant TJU, so she cannot maintain claims against them under the PHRA. (See Gochin Dep., Doc. No. 45, Ex. G, at 54:16-24 (only David Glatter and Joy Soleiman were Plaintiff's supervisors)); Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996) (PHRA claims against individual employees available only where employees aided and abetted employer, usually in a supervisory role); Santai v. Fred Beans Ford, Inc., Civ. No. 10-2367, 2011 WL 3606836 at *3 (E.D. Pa. Aug. 16, 2011) ("[N]on-supervisory employees cannot be liable for aiding and abetting their employer's discrimination

through direct discriminatory acts because they do not share the intent and purpose of their employer.").  Accordingly, I will grant summary judgment to Defendants McLaughlin, Ortlieb, and Vercio with respect to Plaintiff's PHRA claims.

Plaintiff also cannot maintain a PHRA claim against Defendant Joy Soleimanzadeh because Plaintiff did not name her as a defendant in the administrative complaint, and Soleimanzadeh did not receive notice that her conduct could be under formal review.  (See Doc. No. 45, Ex. B (administrative charge does not name Soleimanzadeh or list any of her conduct)); McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 399 (E.D. Pa. 2002) (denying individual PHRA liability where owner of business had notice that his company was under investigation, but where he was "not named anywhere in the administrative complaints, and there [were] no allegations therein that his personal conduct contravened the law").

Plaintiff argues that the issue is "moot" because "cat's paw" liability is available in this context.  (Doc. No. 42 at 38-39.)  "Cat's paw" liability refers, however, to a Court's ability to hold an *employer* liable for the actions of an employee, not the other way around.  See Marcus v. PQ Corp., 458 F. App'x 207, 211 n.3 (3d Cir. 2012) ("A 'cat's paw' or 'subordinate bias' theory of liability is one in which the plaintiff seeks to hold his employer liable for the animus of a nondecisionmaker." (internal citation and quotation marks omitted)).  In these circumstances, I will grant summary judgment to Soleimanzadeh with respect to Plaintiff's PHRA claims.

F.    *Pattern or Practice*

Plaintiff cannot maintain a "pattern or practice" of discrimination claim because she has not brought this suit as a class action.  See Lafate v. Vanguard Grp., Inc., Civ. No. 13-5555, 2014 WL 4384510 at *6 (E.D. Pa. Sept. 5, 2014) (plaintiff may not make an individual "pattern or practice" claim); Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 575 (6th Cir. 2004)

("[T]he pattern-or-practice method of proving discrimination is not available to individual plaintiffs."); <u>Chin v. Port Auth. of N.Y. & N.J.</u>, 685 F.3d 135, 149 (2d Cir. 2012) (declining to allow individual non-class plaintiffs to pursue discrimination claims using the pattern or practice method). Accordingly, to the extent that Plaintiff makes a separate pattern or practice claim, I will grant summary judgment to Defendants.

G.   *Hostile Work Environment*

Plaintiff has not provided any evidence that her workplace was "permeated with discriminatory intimidation, ridicule and insult so severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment." <u>See</u> <u>Warmkessel v. E. Penn Mfg. Co.</u>, Civ. No. 03-2941, 2005 WL 1869458 at *3 (E.D. Pa. July 28, 2005) (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993)). She has not alleged—much less proven—any single incident of harassment, or that incidents of harassment occurred in the workplace "either in concert or with regularity." <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1484 (3d Cir. 1990) (internal citation omitted). Accordingly, I will grant summary judgment to Defendants as to Plaintiff's hostile work environment claim.

H.   *Pennsylvania Wage Payment and Collection Law*

Plaintiff cannot maintain a WPCL claim because she has offered no evidence that Defendants failed to pay her agreed upon wages. <u>See</u> <u>Weldon v. Kraft, Inc.</u>, 896 F.2d 793, 801 (3d Cir. 1990) (WPCL "provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages"); <u>Gordon v. Maxim Healthcare Servs., Inc.</u>, Civ. No. 13-7175, 2014 WL 3438007 at *3 (E.D. Pa. July 15, 2014) (WPCL "only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement" (internal citation and quotation marks omitted)). Plaintiff has not

produced her employment agreement or otherwise shown how Defendants violated it.  Plaintiff alleges that her "healthcare paycheck deductions" increased during her employment but she has produced no evidence that increases in healthcare costs violated the terms of her compensation agreement.   (See Doc. No. 42 at 30.)  In these circumstances, I will grant summary judgment to Defendants as to Plaintiff's WPCL claim.

## V.     CONCLUSION

Upon consideration of Defendants' Renewed Motion for Summary Judgment (Doc. No. 45), Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment (Doc. No. 42), and Plaintiff's Motion for Default Judgment and Sanctions (Doc. No. 46), and all related submissions, I will grant the Motion for Summary Judgment in its entirety and deny the Motion for Default Judgment and Sanctions.  An appropriate Judgment will follow this Order.

**AND IT IS SO ORDERED.**


*/s/ Paul S. Diamond*

_____

November 3, 2015                              Paul S. Diamond, J.